UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,


                                                          13-cr-261 (PKC)

                    -against-                             OPINION AND ORDER


SAUL CABALLERO,

                              Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Defendant Saul Caballero has moved for a sentence reduction pursuant to

Amendment 821 to the Sentencing Guidelines, which went into effect on November 1, 2023 and

applies retroactively.  He also moves for a reduction of his sentence under 18 U.S.C. §

3582(c)(1)(A)(i), based on circumstances that he describes as extraordinary and compelling.

        Because Caballero is not eligible for a sentence reduction under Amendment 821,

that motion will be denied.

        Caballero's motion for relief pursuant to section 3582(c)(1)(A)(i) will be granted,

however.  As the government acknowledges, Caballero is now blind in his right eye due to a

condition called phthisis bulbi.  The government reports that the corrected vision in his left eye is

20/400, which the BOP designates as the boundary between a legally blind, "severe" vision

impairment and a "profound" vision impairment constituting "blindness."  Although Caballero

underwent cataracts surgery in March 2024, he was first recommended for the procedure in May

2017, when a medical notation described him as "clearly visually handicapped."  The

government offers no explanation why nearly seven years elapsed until the procedure took place. The Court further concludes that the considerations of section 3553(a) are satisfied because Caballero has served approximately 81% of his term of imprisonment and has a projected release date of February 23, 2027.

Amendment 821.

On April 27, 2015, defendant was sentenced principally to a term of 210 months' imprisonment.  (Minute Entry; ECF 229.)

The United States Probation Department has issued a report indicating that defendant is not eligible for a sentence reduction under Amendment 821.  (ECF 272.)  Defendant is not eligible to receive a "Status Points" adjustment because he did not receive an enhancement for committing the instant offense while under a criminal justice sentence.  Defendant is not eligible to receive a "Zero-Point Offender" adjustment because he did not receive an adjustment under § 3B1.1 of the Guidelines and was not engaged in a continuing criminal enterprise as defined in 21 U.S.C. § 848.

Because the defendant is not eligible for either the "Status Points" adjustment or the "Zero-Point Offender" offense-level reduction, he is ineligible for a reduction under Amendment 821.

Extraordinary and Compelling Circumstances.

A.  Legal Standard.

Provided that the exhaustion requirement is met, a court may reduce a defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A)(i).  Caballero states that more than 30 days elapsed between his written request for a sentence reduction to the warden of his facility and the filing of his section

3582(c)(1)(A) motion.  (ECF 261 at 19 & Ex. A.)  The government does not dispute that

Caballero exhausted his administrative remedies.

"Before it can reduce a term of imprisonment or release a defendant under §

3582(c)(1)(A), a district court must 'find[ ] that . . . extraordinary and compelling reasons

warrant such a reduction.'"  United States v. Jones, 17 F.4th 371, 374 (2d Cir. 2021) (quoting 18

U.S.C. § 3582(c)(1)(A)(i)).  District courts have "broad discretion" when considering such

motions and are free to "consider the full slate of extraordinary and compelling reasons that may

warrant an imprisoned person's release."  United States v. Amato, 48 F.4th 61, 66 (2d Cir. 2022)

(internal quotation marks omitted).  "The only statutory limit on what a court may consider to be

extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an

extraordinary and compelling reason'" for sentence reduction.  United States v. Brooker, 976

F.3d 228, 237-38 (2d Cir. 2020) (quoting 28 U.S.C. § 994(t)).

B.  Background.

Caballero previously moved for a sentence reduction, principally citing the risks

posed by the Covid-19 pandemic, and the Court denied his motion in a written Order.  (ECF

256.)  The Court concluded that Caballero did not identify extraordinary and compelling reasons

for a sentence reduction and that the considerations of section 3553(a) also weighed against the

application.  (See id.)

Caballero's current motion cites several reasons that he considers extraordinary

and compelling: the continued risks presented by the Covid-19 virus, his claimed rehabilitation

and his age.  Caballero also cites to his loss of vision, which he attributes to inadequate treatment

while in custody of the Bureau of Prisons ("BOP").  Caballero asserts that he "is literally and

legally blind," stating that his incarceration "is extremely hard substantially beyond that which

would be expected of incarcerated prisoners." (ECF 261 at 2.) He states that he has lost vision "from acts of neglect," which included "surgery to his wrong eye, losing vision to both of his eyes during his imprisonment. Now he is condemned to elaborate daily tasks but only with the assistance of fellow inmates." (Id.)

The government's initial response to Caballero's motion failed to address his claimed vision loss. (ECF 267.) The Court directed the government to consult with the BOP and supplement its response to address Caballero's claimed loss of vision. (ECF 268.) The government then filed a supplemental letter-brief and submitted Caballero's BOP medical records under seal. (ECF 269.) This letter-brief acknowledged that Caballero "has a history of various eye-related medical conditions including proliferative diabetic retinopathy, a diabetes complication that affects eyes by causing damage to the blood vessels of the light sensitive tissue at the back of the eye; retinal detachment, which can result in bleeding in the eye, i.e., hyphema; age-related cataracts, including over three nuclear sclerotic cataracts in the defendant's left eye; an unspecified disorder of the eye; and glaucoma." Id. at 1. The government further noted that Caballero is now blind in his right eye due to a condition called phthisis bulbi and that the corrected vision in his left eye is 20/400, which "qualifies as severe vision impairment." Id. at 2 & n.1.

Caballero filed his motion pro se, but on April 15, 2024, counsel at Federal Defenders wrote separately on his behalf, urging that the motion be granted and emphasizing that as of June 2023, he still had not received cataracts surgery. (ECF 273.) The government's response of June 18, 2024 stated that Caballero underwent cataract surgery on March 11, 2024, and attached updated medical records. (ECF 278.)

C.  The Loss of Vision in Caballero's Right Eye.

The Court will begin by reviewing the medical records of Cabellero's vision loss in his right eye.  The government acknowledges that Caballero "is blind in his right eye (OD) as a result of phthisis bulbi, which refers to a shrunken, non-functional eye . . . ."  (ECF 269 at 2.) A Cleveland Clinic website states that "Phthisis Bulbi" "is the medical term for your eye after damage causes it to stop working forever.  . . .  You'll permanently lose vision in your affected eye if you have phthisis bulbi.  You also won't be able to move or control that eye."[1]

The BOP medical records reflect that the vision in Caballero's right eye declined significantly over the course of 2017 and 2018.  A notation of May 18, 2017 described Caballero's deteriorating vision in both eyes.  (ECF 269 Ex. A at 117-18 (under seal).)  It included the following observations:

1. Primary Open Angle Glaucoma, both eyes, mild stage, uncertain progression.
2. Type 2 DM with proliferative diabetic retinopathy w/o macular edema, both eyes, slowly worsening.
3. Exotropia, right eye, moderately severe, slowly worsening.
4. Retinal detachment with retinal break, right eye, symptomatic, slowly worsening.
5. Epiretinal membrane, left eye, mild, stable.
6. Combined cataract, both eyes, symptomatic, slowly worsening.

(Id. at 117.)  Under the heading "Plan," that notation stated that Caballero was to see a retinal surgeon "ASAP for retinal detachment OD.  He will decide next course of action regarding retinal detachment repair and timing of cataract surgery."  (Id.)  The Court takes judicial notice that "OD" stands for "oculus dexter," meaning the right eye, and "OS" stands for "oculus sinister," meaning the left eye.[2]  The notation stated that "[c]ataract Surgery OS may improve

---

[1] https://my.clevelandclinic.org/health/diseases/24085-phthisis-bulbi
[2] https://www.aao.org/eye-health/glasses-contacts/how-to-read-eyeglasses-prescription; see also ECF 269 at 2 (government memo identifying "OD" as the right eye and "OS" as the left eye).

vision, but retinal disease will ultimately limit visual outcome.  Patient is clearly visually

handicapped by the cataract in both eyes and would benefit from cataract surgery."  (Id.)  An all-

caps notation stated, "PLEASE SCHEDULE APPOINTMENT WITH DR. BREAUD,

RETINAL SURGEON ASAP!!"  (Id. at 118.)

   A notation of June 9, 2017 appears to quote Caballero as stating, "The eye doctor

said the surgery in the right eye for the retinal detachment was unsuccessful and he wants to

schedule in the right eye again for the detachment."  (Id. at 93.)  A notation of June 15, 2017

suggests that Caballero underwent an additional procedure, stating, "return from

Ophthalmologist/Laser Surgery Center; discharge post op instructions general with no specifics

on procedure/medications/etc."  (Id. at 86.)   Two weeks later, a notation of June 29, 2017 stated,

"URGENT: Consult written for Emergency visit to OMD secondary to severe hyphema, pain,

halos, and decreased vision OD s/p vitrectomy."  (Id. at 45.)  A notation of November 30, 2017

stated that Caballero "developed severe anterior chamber hyphema post-op . . . Retinal Specialist

consult approved and scheduled."  (Id. at 11.)  A notation of December 7, 2017 stated, "Plan:

repeat ppv with removal of membranes, possible oil removal OD; cataract extraction OS . . . ."

(Id. at 2.)  A notation of that same date states "[t]otal retinal detachment bilaterally . . . ."  (Id.)

   BOP records indicate that between 2015 and 2019, Caballero's right eye

deteriorated from 20/20 vision to the ability to count fingers from a five-foot distance.  An entry

of April 2, 2015 records Caballero's OD vision as 20/20.  (Id. at 238.)  Notations of July 18,

2017 and June 21, 2018 list Caballero's OD vision as "20/Light Perception" and a September 11,

2018 entry lists his OD vision as "20/No Light Perception."  (Id. at 232-34.)  A notation of

February 14, 2019 lists Caballero's OD vision as "20/CF (Counting Fingers)" at a distance of

five feet.  (Id. at 231.)  Records of 2023 and 2024 note Caballero's blindness in the right eye and

the diagnosis of phthisis bulbi.  (ECF 278 Ex. A at 28, 30, 134, 192 (under seal).)

>D.  The Seven-Year Gap Between the Recommendation of Cataracts
>     Surgery and Caballero's March 2024 Procedure.

As mentioned, a notation of May 18, 2017 referred to consultation with a retinal

surgeon for the timing of cataract surgery and described Caballero as "clearly visually

handicapped by the cataract in both eyes and would benefit from cataract surgery."  (ECF 269

Ex. A at 117.)  An entry of December 7, 2017, referenced an ophthalmology consultation for

"Surgery – Cataract Removal," noting "[a]ge related nuclear cataract OS" and "cataract

extraction OS."  (ECF 269 Ex. A at 4.)  Other notations throughout 2017 referenced the presence

of cataracts.  (See, e.g., id. at 20, 27, 47, 139.)  A chart that appears to catalog Caballero's

diagnosed medical conditions from June 21, 2022 through June 20, 2023 listed "Age-related

cataract" of "3+ Nuclear sclerotic cataract OS" as "Current" status with a diagnosis date of

March 9, 2017.  (ECF 269 Ex. B at 132.)  An optometrist's notation of September 23, 2022

referred Caballero to an ophthalmology for "evaluation for cataract OS, noted: 'guarded vision

progress.'"  (ECF 269 Ex. B at 26.)  A notation of May 23, 2023 stated, "Meets BOP criteria for

Cataract Surgery, as requested by OPHTHO."  (ECF 278 Ex. B at 1.)

A record dated March 11, 2024 is labeled "Surgery Admit Assessment" and stated

that Caballero was presented for "Left Eye Cataract Removal."  (Id. at 187.)  An "Operative

Report" of the same date lists a pre-operative diagnosis of "[a]ge-related nuclear sclerosis

cataract, left eye," and records that Caballero underwent a cataract extraction, a stent implant in

the eye and a "[v]isco-canaloplasty" in the left eye."  (Id. at 190.)  A narrative describes the

procedure in some detail.  (Id. at 190-91.)  A separate notation of March 11, 2024, stated "62-

year-old returns from eye surgery today with Dr. Goodman; provided PRED and Toradol eye

drops that were given to inmate, as well as post-op instructions.  He was given an eye patch by this provider as well as dark glasses given pot-procedure [sic].  No complaints."  (Id. at 6.)  A notation of March 29, 2024 states, "Med reconciliation after eyecataract [sic] surgery."  (Id. at 5.)

The government's letter-brief states that the corrected vision in Caballero's left eye is 20/400.  (ECF 269 at 2.)  A BOP Program Statement titled "Management of Inmates With Disabilities" states at Appendix A that vision worse than 20/200, or better than or equal to 20/400, is a "Severe" vision impairment or "Legally Blind."[3]  Vision worse than 20/400 is classified as "Blindness" and "Profound" vision impairment.  The Program Statement states that "[l]ow vision is uncorrectable vision loss that interferes with daily activities and is usually described as permanently reduced vision that cannot be corrected with regular glasses, contact lenses, medicine, or surgery."

> E.  Caballero's Vision Loss Is an Extraordinary and
> Compelling Reason to Reduce His Sentence.

The significant deterioration of vision may constitute extraordinary and compelling reasons to grant an application for a sentence reduction.  In United States v. Bang, 2024 WL 1051582, at *2 (S.D.N.Y. Mar. 11, 2024), Judge Liman recounted the defendant's initial diagnosis of "mild" and "moderate" cataracts in both eyes that, months later, was "clarified" as a diagnosis of "severe vision loss" due to cataracts.  He concluded that defendant's "circumstances are not ordinary.  He suffers from a serious and debilitating medical condition that requires expert and specialized medical care that he cannot receive in prison."  Id. at *4. Judge Liman noted that the defendant had been seeking treatment of his cataracts for "nearly a year" but did not undergo a scheduled surgery, during which time his vision "has continued to worsen."  Id.  He granted defendant's motion for a reduced sentence.  See id. at *4-5.

---

[3] Available at https://www.bop.gov/resources/pdfs/ophthalmology_guidance201810.pdf

The undersigned granted a motion for a sentence reduction to a defendant whose vision deteriorated significantly after he began his term of imprisonment. See United States v. Hussain, 2023 WL 4529625 (S.D.N.Y. July 12, 2023).  In that case, the defendant suffered from severe glaucoma, and, at the time of sentencing, was already blind in one eye and had limited functionality in the second.  See id. at *1, 4.  During the defendant's term of imprisonment, his remaining vision deteriorated significantly and was accompanied by significant pain.  Id. at *4. An ophthalmologist observed that defendant's glaucoma was "simply worsening" and "very concerning," and while the defendant awaited surgery, he experienced further loss of vision.  Id. The defendant eventually underwent a corneal transplant, but a corneal ulcer developed, requiring hourly administration of eyedrops and hospitalization.  Id. at *5.  The undersigned concluded that the defendant's extraordinary and compelling circumstances included chronic pain, repeated trips to the emergency room, the potential need for multiple surgeries and a protracted stay in an ICU.  Id. at *8.

The Sentencing Commission issued an updated policy statement in November 2023 as to extraordinary and compelling reasons to grant a motion for sentence reduction, including a defendant's medical circumstances.  U.S.S.G. § 1B1.13.  "Extraordinary and compelling reasons exist" if "[t]he defendant is (i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional . . . impairment, or (iii) experiencing deteriorating physical . . . health because of the aging process," and such a condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  Id. § 1B1.13(b)(1)(B).  Separately, extraordinary and compelling reasons exist if "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not

being provided and without which the defendant is at risk of serious deterioration in health or death."  Id. § 1B1.13(b)(1)(C).  Extraordinary and compelling reasons also exist if "[t]he defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."  Id. § 1B1.13(b)(2).

Under the sub-heading "Other Reasons," extraordinary and compelling reasons for a sentence reduction exist if "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)."  Id. § 1B1.13(b)(5).

The deterioration of Caballero's vision is a serious medical condition, a serious functional impairment, and a deterioration of physical health caused by the aging process that substantially diminishes his ability to provide self-care.  See U.S.S.G. § 1B1.13(b)(1)(B).  The government quotes remarks from a certified physician assistant who observed that Caballero "ambulates . . . on his own" and "requires no assistance getting from place to place in prison," but she also notes that "his vision is very poor" and that he "requires a magnifying glass to read . . . ."[4]  (ECF 269 at 2.)  But a condition that "substantially diminishes" a defendant's ability to provide for self-care does not require debilitation, such as the inability to ambulate or navigate one's surroundings.

Further, nearly seven years elapsed before Caballero received the recommended cataracts surgery, during which time his vision seriously deteriorated.  See U.S.S.G. § 1B1.13(b)(1)(C).  Caballero is now 63 years old, has been incarcerated for approximately 11

---

[4] This person also identifies Caballero's vision as "20/100 in corrective lenses," which differs from the government's assertion that "most recent medical records" list his "corrected vision" as 20/400.  (Id.)

years and 3 months, and has completed approximately 81% of his term of imprisonment, with a

projected release date of February 23, 2027.  See § 1B1.13(b)(2).  While these circumstances do

not fall squarely within those set forth at subsections (b)(1)(C) and (b)(2), they "are similar in

gravity," id. § 1B1.13(b)(5), and weigh in favor of a sentence reduction.

Accordingly, the Court concludes that Caballero's loss of vision is an

extraordinary and compelling reason to reduce his sentence.

F.   The Section 3553(a) Factors.

"Even if 'extraordinary and compelling' circumstances exist . . . [a] court must

also consider 'the factors set forth in section 3553(a) to the extent that they are applicable' before

it can reduce the defendant's sentence." Jones, 17 F.4th at 374 (quoting 18 U.S.C. §

3582(c)(1)(A)).  "Thus, extraordinary and compelling reasons are necessary—but not

sufficient—for a defendant to obtain relief under § 3582(c)(1)(A)." Id.  Section 3553(a) factors

include the nature and circumstances of the offense, defendant's history and characteristics, the

need for the sentence to reflect the seriousness of the offense, promote respect for the law,

advance just punishment, deter criminal conduct and to protect the public from further crimes of

the defendant.  18 U.S.C. § 3553(a).

As noted, in November 2020, the Court denied Caballero's prior motion for a

sentence reduction that cited to the risks posed by the Covid-19 pandemic.  (ECF 256.)  That

Order summarized the serious nature of Caballero's offense conduct and concluded that the

section 3553(a) factors weighed against granting the motion.  The Court will re-review the

relevant background for applying the section 3553(a) factors to Caballero.

On March 26, 2014, Caballero entered a plea of guilty to one count of conspiracy

to distribute one kilogram and more of heroin and one count of conspiracy to distribute 500

grams and more of methamphetamine.  (ECF 108.)  The Court conducted a two-day Fatico

hearing as to whether a role enhancement was appropriate under the advisory Sentencing

Guidelines, and in a 23-page Memorandum and Order concluded that a three-level leadership

enhancement was appropriate as to the heroin conspiracy, given Caballero's role as a "manager

or supervisor."  (ECF 215.) The Court found that Caballero coordinated drug couriers' travel to

New York City, where their bodies passed heroin pellets at an apartment in the Bronx arranged

for by Caballero.  (Id. at 8-9.)  He oversaw the purchase of couriers' airline tickets from Mexico

to New York.  (Id. at 10.)  He supervised customers' payments for heroin and the collections by

sellers, supervised drug payments wired to Mexico and coordinated out-of-town meetings to

discuss procurement.  (Id. at 11-12.)  He was criminally responsible for 3 kilograms of heroin

and 2.2 kilograms of methamphetamine.  (Sentencing Tr. at 7 (ECF 234).)

   Caballero's advisory Guidelines range of imprisonment was between 292 to 365

months.  (Sentencing Tr. at 8-9.)  The Court sentenced Caballero principally to 210 months'

imprisonment on both counts, to run concurrently, a sentence that was 82 months below the

bottom of the advisory Guidelines range.  (ECF 229.)  In its statement of reasons, the Court

noted that Caballero "knows sources for heroin and knows how to at least have it delivered into

the United States to him, how to cause it to come to him from Mexico."  (Sentencing Tr. at 8.)

The Court stated that "protecting the public from further crimes of this defendant is quite

realistic."  (Id.)  The Court also observed that Caballero engaged in trafficking activities well

into his adulthood and was 54 years old at the time of the PSR.  (Id.)

   The section 3553(a) factors continue to give the Court some pause in weighing

Caballero's motion for a sentence reduction.  Caballero managed or supervised a sophisticated

narcotics-distribution conspiracy and engaged in serious criminal conduct into his fifties.

At the same time, he is now situated differently than in November 2020, when he had served only 92 months of a 210-month sentence.  (See ECF 256 at 4.)  The BOP website currently lists a projected release date of February 23, 2027.[5]  Caballero has now served approximately 136 months of his sentence and has been incarcerated for more than 11 years. Taking account of good-time credit, he has approximately 32 months remaining on his sentence, and has completed approximately 81% of his term of imprisonment.  The Court also notes that Caballero is a citizen of Mexico.  At the sentencing hearing, the Court observed that "[h]e will suffer almost certain deportation at the conclusion of his prison sentence."  (Sentencing Tr. at 11.)

Given that Caballero has now completed roughly 81% of his sentence and has been incarcerated for more than 11 years, the Court concludes that granting his application would be consistent with the goals of section 3553(a), including advancing the goals of just punishment, deterrence, respect for the law, and the nature and circumstances of the offense. CONCLUSION.

Caballero's motion for a sentence reduction under Amendment 821 is DENIED. His motion for a sentence reduction for extraordinary and compelling reasons pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is GRANTED.

The Order is stayed for 21 days and is subject to an immigration detainer.  The government is directed to confirm in writing to the Court within seven days that an immigration detainer has been lodged.

The Clerk is respectfully directed to terminate the motions and the related letter-motions.  (ECF 261, 266, 270, 271, 277.)

---

[5] See https://www.bop.gov/inmateloc/

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       June 28, 2024

COPY MAILED TO:
Saul Caballero
Reg. No. 91981-054
FCI Lompoc II
Federal Correctional Institution
3901 Klein Blvd.
Lompoc, CA  93436